**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230301-U

Order filed December 6, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-23-0301 |
| v. | ) | Circuit No. 18-CF-674 |
| | ) | |
| THADDEUS ANTONIO JONES, | ) ) | Honorable Michael W. Reidy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) The circuit court did not err by failing to reopen *voir dire*. (2) Defendant did not receive ineffective assistance of counsel. (3) Two of defendant's convictions violated the one-act, one-crime rule.

¶ 2    Defendant, Thaddeus Antonio Jones, appeals his convictions and sentence, arguing (1) the Du Page County circuit court erred when it failed to reopen *voir dire*, or alternatively, his counsel provided ineffective assistance by allowing an impliedly biased juror to be placed on the jury, and

(2) two of his convictions are lesser-included offenses and violate the one-act, one-crime rule. We affirm in part, vacate in part, and remand with directions.

¶ 3                                                     I. BACKGROUND

¶ 4         On April 10, 2018, defendant was charged by indictment with 26 counts of various offenses. The State proceeded with 14 counts: possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2018)), robbery (720 ILCS 5/18-1(a), (c) (West 2018)), 2 counts of aggravated kidnapping (*id.* § 10-2(a)(3)), 2 counts of home invasion (*id.* § 19-6(a)(2), (6)), and 8 counts of aggravated criminal sexual assault (*id.* § 11-1.30(a)(2), (5)).

¶ 5         On April 11, 2023, the matter proceeded to a jury trial. During *voir dire*, the court asked the venire if anything about the charges would prevent them from being fair and impartial. A prospective juror stated she was a victim of sexual assault in 2019, she pressed charges against the perpetrator, and the charges remained pending in a different county. She indicated that she did not hold her experience against the prosecution, defense, or law enforcement. The court questioned her at length, and she stated she would be able to listen to the evidence and decide the case based on the facts of this case alone. Defense counsel questioned the juror extensively about how she would be able to handle being on the jury, as the juror mentioned it may be emotionally triggering to hear the evidence. Defense counsel questioned the juror as follows:

> "[DEFENSE COUNSEL]: So if you had a person like you on the jury, would you want you as the jury or would you kick yourself off so to speak?
>
> PROSPECTIVE JUROR: I think I'd want myself because I know how to be impartial, but like I said, I won't know until I'm put in the situation what would be triggering to where I couldn't be impartial so I want to be transparent.

[DEFENSE COUNSEL]: If there was something that was being mentioned or the witness was testifying and it got too bothersome for you, would you feel comfortable raising your hand or doing something to let somebody know you perhaps needed a break?

PROSPECTIVE JUROR: Yes.

\*\*\*

[DEFENSE COUNSEL]: Do you think a break would be sufficient then in order to absolve?

PROSPECTIVE JUROR: It's just hard to say. I've never been on a jury so there's anxiety that goes along with that and then for it to be something so close to home as far as the content of—because I know many of the questions have been warning there's going to be graphic content, that's my biggest concern is I don't know which of those are well within my ability to handle and just being on the younger side also never experiencing this and then also having prior experience so I would be nervous, but I would do my absolute best, too.

[DEFENSE COUNSEL]: So the judge has told people that, you know, your experiences don't get checked at the door, you bring them in with you when you go back to the jury room to deliberate, but you do understand that your experience with respect to this incident would likely not be something—you can't say it happened to me this way and I suffered in this way and because of that she must be in the same—

PROSPECTIVE JUROR: Correct, I would not do that.

\* \* \*

3

THE COURT: We don't treat people, at least in the courtroom as much [as] possible, with kid gloves. People hear things all the time. Whatever the evidence may be—I actually don't know the facts really either.

PROSPECTIVE JUROR: Sure.

THE COURT: So things can be presented and may be shocking no matter—

PROSPECTIVE JUROR: Sure.

THE COURT:—whether it happened to you or it didn't. The more important thing is whether it's triggering or not. Can you be fair to both sides?

PROSPECTIVE JUROR: Yes.

THE COURT: All right. And you can base this—your decision ultimately on the facts and circumstances of this case alone putting aside what had happened to you?

PROSPECTIVE JUROR: Yes."

The court confirmed the parties had no further questions, and the juror was accepted.

¶ 6       The parties gave opening statements and then the court recessed for the day. The following morning, the jury commission provided the court with a note stating the juror at issue was "having a hard time, and is a victim of sex assault." The court stated it was not going to do anything at that time. Defense counsel was "wondering" what the juror meant by a "hard time," for example, was "she having like a panic, anxiety attack, and unable to listen, or what's going on?" The court responded, "[r]ight now we haven't gotten into evidence. If there's something, she was told she can raise her hand. So I think it's premature ***." Relevant to this appeal, the following evidence was presented.

4

¶ 7    Holly Struchil testified that on March 23, 2018, at approximately 5 a.m., she heard a loud banging noise. She walked toward her backdoor and saw a man "jumping around" outside. The man asked if he could come inside, and she refused. Struchil's son heard the commotion and called the police. Defendant asked if he could leave, and Struchil told him she did not care what he did. Defendant smirked, blew her a kiss, and ran. The police arrived and left after approximately 10 minutes. Several hours later, Struchil's dog barked, and she went outside to see what was happening. She saw her neighbor, L.G., on another neighbor's deck in a robe. Struchil approached L.G. and noticed she was upset. Struchil heard tires screeching and saw L.G.'s car exit the driveway and drive erratically down the street. Struchil observed L.G.'s hand was scraped and bleeding. Struchil's husband contacted the police.

¶ 8    L.G. testified that on March 22, 2018, she was 70 years old and home alone while her husband was out of town. She was sleeping in her bed when she awoke because she felt her bed move and saw a shadow above her. The shadow leaned forward, and she saw defendant's face, screamed, and blacked out. Defendant removed L.G.'s pajamas, and she tried to get him off her. Defendant said he was just going to rob her, but she looked sweet, and he "had to have her." He sexually assaulted L.G. by penetrating her vaginally and anally with his penis.

¶ 9    The court announced a recess for lunch. Outside the presence of the jury, the court explained the subject juror raised her hand and the court decided to break for lunch as it was close to noon. When the parties reappeared before the court, defense counsel asked the court to strike the juror for cause because she was not able to set aside her pending case from the current case, it would be disruptive for her to continuously raise her hand to take breaks, and she was seated where the other jurors could see her and her reaction. Defense counsel noted the juror was becoming emotional before L.G. started crying during her own testimony. The State argued the juror's

5

emotional state did not change how she answered the questions during *voir dire*, it was hard for anyone to hear the facts of this case, and the juror's emotional response did not mean she was not being fair and impartial. The court agreed with the State, noting the juror was thoroughly pressed by the defense during *voir dire* and defense counsel had suggested the juror could raise her hand if she needed a break. The court noted it had not heard anything indicating that the juror could not listen to the testimony or pay attention. However, if that issue arose, the court would consider striking the juror.

¶ 10    After the recess, L.G. resumed her testimony, indicating that, at first, defendant penetrated her three times—vaginally, anally, then vaginally again. When defendant was sexually assaulting L.G., she stated she needed to use the bathroom. Defendant let her use the bathroom while he blocked the door. After L.G. went to the bathroom, she grabbed a bottle of rubbing alcohol and tried to throw it at him. He threw her to the floor, pinned her down, and put his hand over her mouth and nose. She could not breathe. Defendant let her up, they went back to the bedroom, and defendant anally penetrated her. Afterwards, defendant said he needed $2000 to get his mother out of jail. L.G. said she did not keep that amount of money in the house. She gave him a necklace to pawn and told him that they could go to the bank. L.G. put on her robe, and defendant put on L.G.'s pajama top and his pants. Defendant drove them to the bank in L.G.'s vehicle. The bank drive-up window was not yet open for the day's business, so they approached the automated teller machine (ATM). L.G. did not know the card's personal identification number (PIN). Defendant said he was going to take her to a house in Aurora, Illinois, and keep her in a basement until the bank opened. She told him she remembered the PIN was at her house.

¶ 11    Defendant and L.G. arrived at her house to look for the PIN. Defendant removed items from a desk, such as credit cards, passports, and L.G.'s ATM card. Defendant found a suitcase in

6

a closet and placed these items inside, along with jewelry and liquor. Defendant and L.G. went outside to her car, and defendant opened the backseat door. Defendant squatted down to lift the suitcase, and L.G. ran to her neighbor's house. She screamed and pounded on the door. No one answered. L.G. then heard Struchil's dog bark, saw Struchil and her husband, and ran in their direction. L.G. was taken to the hospital. She had a cut on her arm, bruises on her mouth, and tearing to her anus and vagina. L.G. spoke to the police later that evening. Officers located L.G.'s vehicle at a motel and her pajama shirt inside a room where defendant's mail was found. Officers found L.G.'s items throughout the motel. Defendant was apprehended at the motel. L.G.'s DNA was found on swabs taken from defendant's penis, and defendant's DNA was found on swabs taken from L.G.'s vagina and anus. L.G. identified defendant in a police lineup.

¶ 12    The jury found defendant guilty of all counts. Defendant filed a motion for a new trial, arguing, *inter alia*, the court erred when it declined to question and strike the subject juror following opening statements and during the State's case-in-chief. The State argued the juror was only emotional during a very brief period at the beginning of L.G.'s testimony, she was listening attentively, she did not appear distracted, and there was no evidence she did anything other than her duties as a juror. The court noted it allowed one break because the juror raised her hand. The court found the break was a benefit to the defense, explaining it split up L.G.'s testimony and allowed everyone to calm down as there was a sense of general anxiety throughout the courtroom awaiting L.G.'s testimony. Further, the second part of L.G.'s testimony was "watered down," very mechanical, and not very emotional. The court stated no inquiry was necessary because there was no indication the juror could not perform her duties, and she listened attentively enough to become the foreperson of the jury.

7

¶ 13    At sentencing, the court merged various counts and sentenced defendant to five consecutive terms of 20 years' imprisonment for home invasion and four counts of aggravated criminal sexual assault, two concurrent terms of 20 years' imprisonment for two counts of aggravated kidnapping, and two concurrent terms of 14 years' imprisonment for robbery and unlawful possession of a stolen motor vehicle. Defendant filed a motion to reconsider the sentence, which the court denied. This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant argues (1) the court erred when it failed to reopen *voir dire*, or alternatively, his counsel provided ineffective assistance by allowing an impliedly biased juror to be placed on the jury, and (2) one of his aggravated criminal sexual assault convictions and his robbery conviction violate the one-act, one-crime rule. We address each contention in turn.

¶ 16                              A. Reopen *Voir Dire*

¶ 17    Defendant argues the court erred when it failed to reopen *voir dire* and strike the juror for cause (1) after receiving the note from the jury commission and (2) when the juror became emotional during L.G.'s testimony and raised her hand for a break. The State argues defendant forfeited this claim by failing to preserve it below. In reply, defendant disagrees that he forfeited this claim but argues it is otherwise reviewable under the plain error doctrine. We first determine whether a clear or obvious error occurred. *People v. Jackson*, 2022 IL 127256, ¶ 21.

¶ 18    A defendant has the constitutional right to an impartial and competent jury. *Tanner v. United States*, 483 U.S. 107, 126 (1987). "[M]atters relating to jury selection and management are within the discretion of the trial court." *People v. Nelson*, 235 Ill. 2d 386, 446 (2009); *People v. Harris*, 123 Ill. 2d 113, 134 (1988) (applying the abuse of discretion standard of review where the defendant argued the court erred when it failed to reopen *voir dire* to further question a juror). This

8

is a highly deferential standard of review, and an abuse of discretion occurs only where the court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would agree with it. *People v. Peterson*, 2017 IL 120331, ¶ 125. Therefore, it is inconsequential if this court would not have made the same decision as the circuit court. *Id.*

¶ 19     In this case, the court did not abuse its discretion when it did not reopen *voir dire*. First, during *voir dire*, the court and defense counsel thoroughly questioned the juror. Although the juror expressed concern about her reaction to some evidence because she was a victim of sexual assault, defense counsel asked the juror if she would feel comfortable raising her hand during the trial to ask for a break if it became bothersome. The juror answered affirmatively and stated she was not sure if the break would absolve her issue because she had never been in this situation before, but she would do her best. See *People v. Tipton*, 222 Ill. App. 3d 657, 665 (1991) (finding the circuit court was not required to grant a challenge for cause where a juror initially stated she " 'might' " have some difficulty being impartial but later clearly indicated that she would "do her best" to abide by her oath as a juror). The juror concluded that she would be fair to both sides and base her decision on the facts and circumstances of this case only.

¶ 20     Second, there was no evidence that the juror's statement that she could be fair and decide the case based on the facts before her was untrue or that she had changed her mind in this regard. It was defense counsel's suggestion for the juror to notify the court if she was having a difficult time in order to receive a break, and this is exactly what the juror did. The record fails to demonstrate that the juror abandoned her duties as a juror. In contrast, the court observed the juror listened attentively and noted she even became the foreperson of the jury. See *People v. Adkins*, 239 Ill. 2d 1, 20-21 (2010) (stating the circuit court is in a superior position to make credibility determinations with jurors). Although the juror became emotional during L.G.'s testimony, this

9

did not rebut or call into question the juror's statements during *voir dire*. See *People v. Strawbridge*, 404 Ill. App. 3d 460, 465 (2010) ("The mere suspicion that a juror is biased is insufficient to warrant disqualifying a juror."). The facts and evidence in the case were presumably difficult to hear and see, regardless of whether a juror was a victim of sexual assault. The court also noted there was a general anxiety throughout the courtroom toward L.G.'s testimony, and after the beginning portion of her testimony and a break, emotions in the courtroom calmed down. The court observed this benefited the defense because it split L.G.'s emotional testimony and the latter portion of L.G.'s testimony was mechanical and not as emotional. Further, there was not another instance of the juror requesting a break. For these reasons, we cannot say the court abused its discretion when it did not reopen *voir dire*.

¶ 21    In reaching this conclusion, we reject defendant's reliance on cases where a juror's responses during *voir dire* were later learned to be incorrect or untruthful as those circumstances are not present here. See *People v. Mitchell*, 121 Ill. App. 3d 193, 194 (1984) (the juror stated he had never been a victim of a crime, but it was later learned the juror may have been a victim of the same offense at issue); *People v. Castro*, 146 Ill. App. 3d 629, 630 (1986) (the juror stated her stepson had been arrested for the same offense and she was unfamiliar with the details but it was later learned the stepson's involvement was more extensive than the juror indicated).

¶ 22                                    B. Ineffective Assistance of Counsel

¶ 23    The United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. In determining whether defendant was denied the effective assistance of counsel, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on this claim, a criminal defendant must demonstrate that (1) counsel's performance was deficient and

10

(2) the deficient performance prejudiced defendant in that he was deprived of a fair trial. *People v. Brown*, 2023 IL 126852, ¶ 11. Failure to establish either prong of this test is fatal to the claim. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000).

¶ 24    Here, defendant argues counsel's performance was deficient by failing to exclude the subject juror for cause or via a peremptory challenge because she was impliedly biased against him due to being a recent victim of sexual assault. Defendant suggests this error is structural, and therefore, he need not demonstrate prejudice.

¶ 25    We conclude defendant cannot satisfy the prejudice prong required under *Strickland* and his claim of ineffective assistance of counsel fails. See *id.* (failure to satisfy either prong of the *Strickland* test is fatal to the claim). Although defendant argues his claim raises a structural error and prejudice is presumed, this precise argument has been explicitly rejected by our supreme court. See *People v. Metcalfe*, 202 Ill. 2d 544, 560-61 (2002) (holding prejudice is not presumed where counsel allowed a biased juror to serve on the jury and the defendant must still demonstrate prejudice pursuant to *Strickland*); *People v. Manning*, 241 Ill. 2d 319, 333 (2011) (rejecting the defendant's indirect attempt to revisit the same argument). Therefore, defendant is required to demonstrate prejudice to support this claim. See *People v. Marks*, 2023 IL App (3d) 200445, ¶ 48 (applying the prejudice prong to defendant's claim that counsel was ineffective for failing to remove a juror for cause). Moreover, defendant has forfeited any claim of prejudice as he failed to make any argument in this regard. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing any points not argued in the appellant's brief are deemed forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing). Assuming, *arguendo*, we found counsel's performance to be deficient, our review of the record demonstrates the evidence of defendant's

guilt was overwhelming and he would not be able to show a reasonable probability that the result of the proceeding would have been different but for counsel's failure to remove the juror.

¶ 26                              C. One-Act, One-Crime Rule

¶ 27        Defendant argues one of his convictions for aggravated criminal sexual assault and his robbery conviction are lesser-included offenses of aggravated kidnapping. Although this issue was not preserved for our review, it may be reviewed under the second prong of the plain error doctrine because such violation affects the integrity of the judicial process. *People v. Coats*, 2018 IL 121926, ¶ 10. We first determine whether error occurred. *Jackson*, 2022 IL 127256, ¶ 21.

¶ 28        Under the one-act, one-crime rule, a defendant may not be convicted of multiple offenses arising out of the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). When the defendant has committed several acts, more than one conviction is improper if one offense is a lesser-included offense of another. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). We undergo a two-step analysis to determine whether there was a violation of the one-act, one-crime rule. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). First, we determine whether the defendant's conduct consisted of a single physical act or separate acts. *Id.* If the defendant committed multiple acts, we then determine whether any of the offenses are lesser-included offenses. *Id.* Here, we limit our scope to review the second part of this analysis, as neither party argues that defendant's conduct consisted of a single physical act.

¶ 29        We employ the abstract elements approach to determine whether one offense is a lesser-included offense of another, which requires us to compare the elements of both offenses. *Miller*, 238 Ill. 2d at 166. "If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *Id.* Our supreme court's decision in *People v. Reveles-*

12

*Cordova*, 2020 IL 124797, is instructive. In that case, the defendant was convicted and sentenced for criminal sexual assault and home invasion predicated upon criminal sexual assault. *Id.* ¶ 9. The supreme court vacated the defendant's criminal sexual assault conviction and held:

"Proof of criminal sexual assault is a necessary element of proof of home invasion predicated on criminal sexual assault. All the elements of criminal sexual assault are included in the offense of home invasion predicated on criminal sexual assault, and criminal sexual assault contains no element not included in home invasion. It is impossible to commit home invasion predicated upon criminal sexual assault without committing criminal sexual assault. As such, criminal sexual assault is a lesser-included offense of home invasion." *Id.* ¶ 21.

¶ 30    Here, defendant was convicted of two counts of aggravated kidnapping. A person commits kidnapping when he knowingly and secretly confines another against their will by force or threat of imminent force, carries another from one place to another with intent secretly to confine that other person against their will, or by deceit or enticement induces another to go from one place to another with intent secretly to confine that person against their will. 720 ILCS 5/10-1 (West 2018). A kidnapping charge is elevated to aggravated kidnapping when the defendant inflicts great bodily harm, other than by the discharge of a firearm, or commits another felony upon his or her victim. *Id.* § 10-2(a)(3). Here, the State relied on two underlying felonies to elevate the kidnapping charges to aggravated kidnapping, specifically, robbery and aggravated criminal sexual assault, which was provided in the charging instrument and jury instructions. Therefore, defendant was convicted of two counts of aggravated kidnapping predicated on robbery and aggravated criminal sexual assault, and the aggravated kidnapping convictions contained all of the elements of robbery and aggravated criminal sexual assault. See *People v. Snelling*, 2021 IL App (1st) 200293-U, ¶ 38

13

(explaining the defendant could not commit aggravated kidnapping as charged without committing the predicate offense of aggravated criminal sexual abuse). Thus, defendant's convictions for robbery and one count of aggravated criminal sexual assault violate the one-act, one-crime rule as they are lesser-included offenses of aggravated kidnapping predicated on robbery and aggravated criminal sexual assault. See *Reveles-Cordova*, 2020 IL 124797, ¶ 13 (an offense is deemed a lesser-included offense of another when it is "impossible to commit the greater offense without necessarily committing the lesser offense"); *People v. Carter*, 2024 IL App (2d) 230234, ¶ 11 (concluding a home invasion conviction predicated on criminal sexual assault rendered the latter a lesser included offense of the former).

¶ 31　　　We vacate defendant's robbery conviction and its accompanying sentence of 14 years' imprisonment. We remand this cause to the circuit court for a determination as to which one of defendants aggravated criminal sexual assault convictions is the less serious offense, and order that conviction and sentence vacated. See *People v. Artis*, 232 Ill. 2d 156, 177 (2009) (providing the better course is to adhere to the principle that when it cannot be determined which of two or more convictions is the more serious offense, the cause will be remanded to the circuit court for that determination).

¶ 32　　　　　　　　　　　　　III. CONCLUSION

¶ 33　　　The judgment of the circuit court of Du Page County is affirmed in part and vacated in part. We remand this cause to the circuit court for a determination as to which of defendant's aggravated criminal sexual assault convictions is the less serious offense, and order that conviction vacated.

¶ 34　　　Affirmed in part, vacated in part, and remanded with directions.

14